**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| LINDA STAFFORD, | ) | Cause No. 1:11-cv-00113-WTL-MJD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge William T. Lawrence |
| | ) | Magistrate Judge Mark J. Dinsmore |
| NATIONAL RAILROAD PASSENGER | ) | |
| CORPORATION, d/b/a AMTRAK, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................... 1

II.   STATEMENT OF MATERIAL FACTS NOT IN DISPUTE ........................................... 2

    A.   Amtrak's Beech Grove Facility ................................................... 2

    B.   The Hiring and Promotion Process into Management-level Positions ................ 2

    C.   Plaintiff's Employment History with Amtrak ..................................... 3

    D.   Positions Plaintiff Applied for in 2009 and 2010 ............................... 5

        a.   Plaintiff's March 2009 Application for the Supervisor, Material Control Position ................................................... 6

        b.   Plaintiff's Application for the Contracting Agent Position ..................... 7

        c.   Plaintiff's August 2009 Application for the Supervisor, Material Control Position ................................................... 9

        d.   Plaintiff's Application for the Senior Manager Material Control Position ................................................... 11

        e.   Plaintiff's Application for the Customer Service Quality Supervisor Position ................................................... 11

        f.   Plaintiff's Application for the General Foreman Position ....................... 12

        g.   Plaintiff's Application for the Director, HR Shared Services Center Position ................................................... 13

        h.   Plaintiff's Application for the Manager, Material Control Position ........ 14

    E.   EEOC Charges ................................................... 16

III.  PROCEDURAL HISTORY ................................................... 16

IV.   ARGUMENT ................................................... 17

    A.   Summary Judgment Standard ................................................... 17

    B.   Because Plaintiff Failed To Exhaust Her Administrative Remedies On Most Of Her Title VII Failure To Promote Claims And Her Disparate Impact Claim, They Are Barred As A Matter Of Law ................................................... 18

    C.   Plaintiff's Section 1981 Failure To Promote Claims Are Limited To Only Those Denials That Fall Within The Two-Year Statute Of Limitations ............. 21

    D.   The Undisputed Evidence Does Not Support Plaintiff's Failure To Promote Claims As To Any Of The Positions To Which She Applied .............. 22

        a.   Customer Service Quality Supervisor position ................................................... 24

        b.   Senior Manager Material Control and Supervisor Material Control (May 2009) positions ................................................... 24

# TABLE OF CONTENTS
(continued)

**Page**

c.    Contracting Agent position ................................................................ 25

d.    Supervisor Material Control position (August 2009) ............................ 26

e.    General Foreman position ................................................................... 27

f.    Director, HR Shared Services Center position ...................................... 28

g.    Manager, Material Control position .................................................... 29

E.    Even If Plaintiff Somehow Could Establish A Prima Facie Case Of Race Discrimination, She Cannot Overcome Amtrak's Legitimate, Non-Discriminatory Reasons For Hiring Each Successful Candidate ...................... 30

F.    Amtrak Is Entitled To Summary Judgment On Plaintiff's Disparate Impact Claim, Because She Lacks Standing To Pursue It And Has Adduced No Evidence To Support It ........................................................................ 31

a.    Even If Plaintiff Had Exhausted Her Administrative Remedies, She Has No Standing To Allege A Disparate Impact Claim, Because She Was Not Qualified For Any Of The Positions She Sought ................................................................................ 31

b.    Plaintiff Has Also Failed To Point To Any Facially Neutral Employment Policy About Which She Complains, Or Any Evidence To Support A Claim That Some Policy Had A Discriminatory Impact ............................................................ 32

G.    Amtrak Is Entitled To Summary Judgment On Plaintiff's Intentional Infliction Of Emotional Distress Claim Because She Has Failed To Show That Amtrak Engaged In Extreme Or Outrageous Conduct Or Acted With Intent To Cause Her Emotional Distress ........................................................ 34

V.    CONCLUSION .......................................................................................... 35

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Bd. of Tr. of Keene State Coll. v. Sweeney,
    439 U.S. 24 (1978)..................................................................................30

Benuzzi v. Bd. of Educ. of City of Chicago,
    647 F.3d 652 (7th Cir. 2011) ...................................................................17

Brown v. Ill. Dept. of Natural Resources,
    499 F.3d 675,682-3(7th Cir. 2007) ....................................................23, 30

Cheek v. W. & S. Life Ins. Co.,
    31 F.3d 497 (7th Cir. 1994) .....................................................................18

Cullison v. Medley,
    570 N.E.2d 27 (Ind. 1991) .......................................................................34

Dandy v. UPS, Inc.,
    388 F.3d 263 (7th Cir. 2004) ...................................................................23

Davidson v. Citizens Gas & Coke Utility,
    470 F. Supp. 2d 934 (S.D. Ind. 2007) ................................................31, 32

Diersen v. Walker,
    117 Fed. Appx. 463 (7th Cir. 2004)...........................................................19

Ellis v. Fedex Smartpost, Inc.,
    346 Fed. Appx. 92 (7th Cir. 2009)............................................................23

Farrell v. Butler Univ.,
    421 F.3d 609 (7th Cir. 2005) ........................................................31, 32, 33

Fiona Feng Chen v. Northwestern Univ.,
    175 Fed. Appx. 24 (7th Cir. 2005)............................................................18

Gawley v. Indiana Univ.,
    276 F.3d 301 (7th Cir. 2001) ...................................................................18

Gee v. Metaldyne Corp.,
    2008 WL 4936865 (S.D. Ind. Nov. 14, 2008) ................................... passim

Geldon v. S. Milwaukee Sch. Dist.,
    414 F.3d 817 (7th Cir. 2005) ...................................................................18

## TABLE OF AUTHORITIES
(continued)

**Page**

Goodum v. White,
2006 WL 566469 (N.D. Ill. Mar. 3, 2006)....................................................................25, 26

Greater Indianapolis Chapter of the N.A.A.C.P. v. Ballard,
741 F. Supp. 2d 925 (S.D. Ind. 2010) ................................................................................33

Harriston v. Chicago Tribune Co.,
992 F.2d 697 (7th Cir. 1993) ............................................................................................34

Hithon v. Tyson Foods, Inc.,
144 Fed. Appx. 795 (11th Cir. 2005) (holding that the failure to promote claim was
cognizable under 1981 because the promotion sought to a complex-wide human
resources manager would have resulted in a new and distinct relationship) ..........................21

Hoffman-Dombrowski v. Arlington Intern. Racecourse, Inc.,
254 F.3d 644 (7th Cir. 2001) ........................................................................................23, 24

Irby v. Board of Educ. of City of Chicago,
2011 WL 1526732 (N.D. Ill. Apr. 20, 2011) .......................................................................19

Jackson v. City of Chicago,
552 F.3d 619 (7th Cir. 2009) ............................................................................................23

Jones v. R.R. Donnelley & Sons Co.,
541 U.S. 369 (2004)..........................................................................................................21

Jordan v. City of Gary, Ind.,
396 F.3d (7th Cir. 2005) .......................................................................................... passim

Juszczak v. Blommer Chocolate Co.,
1999 WL 1011954 (N.D. Ill. Sept. 30, 1999) ...............................................................19, 20

Kim v. Nash Finch Co.,
123 F.3d 1046 (8th Cir. 1997) .......................................................................................21, 22

Lemaster v. Spartan Tool, LLC,
2009 WL 700240 (S.D. Ind. March 16, 2009).......................................................................35

Lewis v. CITGO Pet. Corp.,
561 F.3d 698 (7th Cir. 2009) ............................................................................................17

Liesen v. City of Shelbyville,
968 F. Supp. 409 (S.D. Ind. 1997).................................................................................19, 20

# TABLE OF AUTHORITIES
(continued)

**Page**

Majeske v. Fraternal Order of Police, Local Lodge No. 7,
  94 F.3d 307 (7th Cir. 1996) .................................................................................31

McCoy v. Harrison,
  341 F.3d 600 (7th Cir. 2003) ...............................................................................17

McDonnell Douglas Corp. v. Green,
  411 U.S. 792 (1973)..............................................................................................22

McGoffney v. Vigo Cty. Div. of Family and Soc. Servs.,
  389 F.3d 750 (7th Cir. 2004) ...............................................................................18

Melendez v. Ill. Bell Telephone Co.,
  79 F.3d 661 (7th Cir. 1996) .................................................................................32

Millbrook v. IBP, Inc.,
  280 F.3d 1169 (7th Cir. 2002) ........................................................................30, 31

Mills v. Health Care Serv. Corp.,
  171 F.3d 450 (7th Cir. 1999) ...............................................................................17

on Connecticut v. Teal,
  457 U.S. 440 (1982).............................................................................................31

Powdertech, Inc. v. Joganic,
  776 N.E.2d 1251 (Ind. Ct. App. 2002)................................................................34

Ricci v. DeStefano,
  129 S.Ct. 2658 (2009)..........................................................................................33

Sambrano v. Mabus,
  2010 WL 5110206 (N.D.Ill. Dec. 8, 2010)....................................................24, 25

Settles v. Ill. Dept. of Human Servs.,
  42 Fed. Appx. 872 (7th Cir. 2002)......................................................................33

Stevens v. Housing Authority of South Bend,
  720 F. Supp.2d 1013 (N.D.Ind. 2010) ("disparate impact is insufficient to prove a
  Section 1981 claim")............................................................................................31

Stockwell v. City of Harvey,
  597 F.3d 895 (7th Cir. 2010) ...............................................................................30

Sublett v. John Wiley & Sons, Inc.,
  463 F.3d 731 (7th Cir. 2006) ..........................................................................22, 23

## TABLE OF AUTHORITIES
(continued)

Tsitsopoulou v. Univ. of Notre Dame
   2011 WL 839669 (N.D. Ind. Mar. 7, 2011)..............................................................34

Vitug v. Multistate Tax Comm'n.,
   88 F.3d 506 (7th Cir. 1996) ...................................................................................33

Wright v. Richmond Power and Light,
   2005 WL 1025769 (S.D. Ind. Apr. 21, 2005).............................................30, 31, 34

**STATUTES**

42 U.S.C. §1981 ("Section 1981")...........................................................16, 21, 22, 31

42 U.S.C. §2000e ("Title VII")...............................................................................16

## I.    INTRODUCTION

Discovery has confirmed what Amtrak has known since Plaintiff Linda Stafford ("Plaintiff") filed this lawsuit: that there is no evidence whatsoever to support her claims that National Railroad Passenger Corporation d/b/a Amtrak ("Amtrak") racially discriminated against her when it failed to promote her into a management position.  Instead, the undisputed evidence demonstrates that Plaintiff, a current clerical employee at Amtrak, failed to meet the minimum qualifications for the management positions she repeatedly sought, and that Amtrak consistently hired the most qualified individual for the position at issue.

Plaintiff does not allege the existence of direct evidence of race discrimination, nor is there circumstantial evidence demonstrating bias against African-American applicants.  Rather, the undisputed evidence shows that Plaintiff was not even minimally qualified for any of the positions she sought, let alone that she was as qualified or more qualified than any of the chosen candidates.  Further, the record is devoid of any evidence that Amtrak's legitimate, non-discriminatory reasons for its hiring decisions were a pretext for race discrimination.

Plaintiff's disparate impact claim is similarly deficient.  Plaintiff cannot point to any facially neutral policy that allegedly has a disparate impact upon African-American candidates, and she cannot marshal any statistical evidence to support such a claim.  In short, Plaintiff can point to no evidence to support a *prima facie* case of disparate impact discrimination.

Finally, Plaintiff premises her intentional infliction of emotional distress claim entirely on Amtrak's decisions not to promote her.  However, routine employment decisions fall far below the level of "extreme and outrageous" conduct necessary to establish such a claim.

In short, all of Plaintiff's claims are without factual support in the record and are wholly without merit.  For these reasons, Amtrak respectfully requests that this Court grant its Motion for Summary Judgment.

## II.     STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

### A.     Amtrak's Beech Grove Facility

1.     Amtrak provides passenger railroad service throughout the United States and employs over 20,000 employees.  (Osbourne Decl. ¶ 4[1].)  Amtrak's Beech Grove, Indiana facility is an equipment maintenance facility.  (Id. at ¶ 5.)  With the exception of management-level employees, the majority of employees at Beech Grove are unionized.  (Id. at ¶ 6.)

### B.     The Hiring and Promotion Process into Management-level Positions

2.     At the Beech Grove facility, each union's collective bargaining agreement governs the internal hiring processes for its positions.  (Walls Dep. 13[2]; Osbourne Decl. ¶ 7.)

3.     However, Amtrak's Human Resources department oversees and coordinates the hiring and promotion of management-level employees.  (Osbourne Decl. ¶ 8.) Amtrak seeks to fill vacant management positions with the best-qualified individuals and accepts applications from both internal and external candidates.  (Walls Dep. 7; Osbourne Decl. ¶ 9.)

4.     Human Resources Officer Keith Osbourne ("Osbourne") or Human Resources Contract employee Katie Jones ("Jones"), both of whom are African-American, usually review application materials that are submitted for vacant positions at the Beech Grove facility.  (Osbourne Decl. ¶ 12.)  They also review the applicant pool to ensure Amtrak interviews a diverse group of qualified applicants.  (Id.)  Human Resources officers, in collaboration with the hiring manager, or his or her designee, select which applicants to interview.  (Walls Dep. 7-9.)

5.     Candidates are invited to interview before a panel composed of at least one Human Resources representative—typically Osbourne or Jones—and the hiring manager for

---

[1] The declaration of Keith Osbourne ("Osbourne Decl.") is located at Exhibit 7 of the Designation of Evidence.

[2] The deposition of Brenda Walls ("Walls Dep.") is located at Exhibit 2 of the Designation of Evidence.

the vacant position.  (Walls Dep. 15; Osbourne Decl. ¶ 14.)  During the interview, all candidates are asked a series of structured, behavioral-based questions about his or her job-related skills for the position.  (Walls Dep. 24, 32.)  The interviewers assign scores to each answer and come to a consensus on which candidate is most qualified.  (Walls Dep. 14-15.)  In collaboration with Human Resources, the hiring manager makes the ultimate hiring decision, and Amtrak extends an offer to that individual.  (Osbourne Decl. ¶ 16.)

6.      Amtrak does not consider union seniority as a factor in hiring for management positions.  (Pl. Dep. 315-316[3]; Walls Dep. 13.)  Instead, Amtrak considers an applicant's experience and qualifications.  (Pl. Dep. 315-316; Walls Dep. 7, 13.)  Aside from reviewing an employee-applicant's attendance and disciplinary records for the past one-year by consulting a comprehensive database, Amtrak does not review or inquire into the applicant's personnel file.  (Osbourne Decl. ¶ 11.)  Rather, Amtrak focuses on an applicant's application materials, and if invited to interview, his or her interview performance.  (Pl. Dep. 333; Walls Dep. 10-12, 16.)

7.      Of course, in order to be considered, or hired, for any position, the candidate must at least meet the minimum qualifications.  (Pl. Dep. 316; Osbourne Decl. ¶ 17.)

**C.      Plaintiff's Employment History with Amtrak**

8.      Plaintiff, a current employee of Amtrak, was hired at the Beech Grove facility on March 1, 1979.  (Pl. Dep. 18.)

9.      Since her hire in 1979, Plaintiff has worked in various clerical positions and has received regular increases in her hourly pay rate consistent with the Transportation

---

[3] The deposition of Linda Stafford ("Pl. Dep.") is located at Exhibit 1 of the Designation of Evidence.

Communication Union's ("TCU") collective bargaining agreement ("CBA"), which covers both her current and previous clerical positions.  (Pl. Dep. 31, 45-52; Clay Dep. 50-74[4].)

10.     In the 1980s, Plaintiff worked as a material control clerk where her job duties included data entry, monitoring inventory, preparing items for shipping, and ordering supplies that employees in her department requested.  (Pl. Dep. 143-144; Clay Dep. 51.)  Over the years, Plaintiff transferred to various other clerical positions where her responsibilities consisted of what Plaintiff referred to in her job applications as "general clerical duties."  (Pl. Dep. 45-47; Pl. Dep. 176-180 and Ex. 52; Pl. Dep. 184 and Ex. 55; Pl. Dep. 186, 189 and Ex. 58; Pl. Dep. 199 and Ex. 64; Pl. Dep. 197-199 and Ex. 66; Clay Dep. 50-73.)

11.     For the past eight years, Plaintiff has been a clerk in the Mechanical Department.  (Pl. Dep. 46-49; Clay Dep. 72-73.)  From approximately 2003 to 2009, she worked as a Timekeeper where her primary duties included inputting information from timecards into the computer system and running reports to ensure timecards were accurate.  (Id.)  Since 2009, Plaintiff has worked as a Statistical Clerk.  (Pl's Dep. 45.)  Her current responsibilities include data entry, tracking the hours employees work, inputting pay adjustments, providing employees with verification of employment for medical leave purposes, and distributing paychecks.  (Pl. Dep. 47-49.)  She is supervised by Ronald Summers ("Summers").  (Pl. Dep. 134.)

12.     With the exception of working as a commissary worker in New York City from 1988 to 1989—a position that is responsible for loading trains with food and other supplies needed to service passengers—Plaintiff has at all times held clerical positions.  (Pl. Dep. 203 and Ex. 69; Clay Dep. 46-47, 58.)

---

[4] The deposition of Jacqueline Clay ("Clay Dep.") is located at Exhibit 3 of the Designation of Evidence.

### D.    Positions Plaintiff Applied for in 2009 and 2010

13.    From January 24, 2009 to January 24, 2011, Plaintiff applied for seven management-level positions within Amtrak.  (Pl. Dep. 176-177, 181-182, 186, 195, 197, 201, 231-231.)  Plaintiff also bid for a supervisory-level union position, for which the union collective bargaining agreement governed the selection process.  (Pl. Dep. 192; Ray Decl. ¶ 4[5].)

14.    When applying for these various positions, Plaintiff submitted her resume, an Amtrak application, or both her resume and an Amtrak application.  (Pl. Dep. 177-180 and Ex. 52; Pl. Dep. 181-182, 184 and Ex. 55; Pl. Dep. 186 and Ex. 58; Pl. Dep. 192-194 and Ex. 61; Pl. Dep. 195 and Ex. 64; Pl. Dep. 197-199 and Ex. 66; Pl. Dep. 201-203 and Ex. 69; Pl. Dep. 231-232; Walls Dep. 9-10; Osbourne Decl. ¶ 19.)

15.    The resumes and applications she submitted were sparse and lacked details regarding her employment history, job duties, union experience and education.  (Osbourne Decl. ¶ 20.)  Human Resources Officer Keith Osbourne testified, "[t]he resume is consistent with the application.  It doesn't provide a lot of details."  (Osbourne Dep. 67 and Ex. 4[6].)

16.    For example, although Plaintiff included information on both her resumes and applications about her educational background, she did not indicate what type of degree she received.  (Osbourne Decl. ¶ 21.)  Plaintiff testified that she obtained a Bachelor's of Science in Business Administration.  (Pl. Dep. 139, 142, 167, 177, 184, 232, 323.)  However, her application materials state "Major General Studies with Concentration in Business and Supervision."  (Pl. Dep. 179-180 and Ex. 52; Pl. Dep. 184 and Ex. 55; Pl. Dep. 186 and Ex. 58; Pl. Dep. 194 and Ex. 61; Pl. Dep. 195 and Ex. 64; Pl. Dep. 199 and Ex. 66.)

---

[5] The declaration of Sarah Ray (hereinafter Ray Decl.) is located at Exhibit 8 of the Designation of Evidence.

[6] The deposition of Keith Osbourne ("Osbourne Dep.") is located at Exhibit 4 of the Designation of Evidence.

17.     Similarly, Plaintiff does not set forth the details of her employment history and job responsibilities in the resumes or applications she submitted.  (Pl. Dep. 179-180 and Ex. 52; Pl. Dep. 184 and Ex. 55; Pl. Dep. 186 and Ex. 58; Pl. Dep. 194 and Ex. 61; Pl. Dep. 195 and Ex. 64; Pl. Dep. 199 and Ex. 66; Pl. Dep. 203 and Ex. 69.)  Rather, with respect to her Amtrak employment history, Plaintiff merely states that she has been a clerk for thirty-three years where she "performed general clerical duties," "worked various clerical positions including Secretary and Computer Tech," "perform[s] payroll related duties," and utilizes WMS and MySap.  (Id.)

18.     Furthermore, although Plaintiff claims she solicited donations on behalf of the United Way and served as Vice President of her Union from 2008 to 2010, where she was responsible only for receiving grievances from union employees and passing them along to the union office, Plaintiff admits that she did not include this information in any of her applications or resumes she submitted for the various management-level positions.  (Pl. Dep. 199, 288-289, 313-314, 317-319; Osbourne Dep. 65-66.)

19.     Between January 2009 and January 2010, Plaintiff applied for the following seven management-level positions and one supervisory-level union position: Supervisor, Material Control in March and August 2009; Contracting Agent; Senior Manager Material Control; Customer Service Quality Supervisor; General Foreman; Director, HR Shared Services Center, and Manager Material Control.  (Pl. Dep. 176-177, 181-182, 186, 192, 195, 197, 201, 231-232.)

> a.     **Plaintiff's March 2009 Application for the Supervisor, Material Control Position**

20.     On March 25, 2009, Amtrak posted a position for a Supervisor, Material Control at its Beech Grove Facility.  (Pl. Dep. 176-177 and Ex. 51.)

21.     Plaintiff applied for the position in March of 2009 and was invited for an interview.  (Pl. Dep. 176-177 and Exs. 52, 53.)  However, on May 11, 2009, the day prior to the interview, Plaintiff sent an e-mail to the Human Resources department cancelling her interview.  (Pl. Dep. 180-181 and Ex. 52, 53; Osbourne Dep. 17-18.)  As such, Plaintiff was no longer considered for the position.  (Id.)

**b.     Plaintiff's Application for the Contracting Agent Position**

22.     On March 26, 2009, Amtrak posted a vacancy for a Contracting Agent position in the Procurement & Materials Management Department at its Beech Grove Facility.  (Pl. Dep. 181-182 and Ex. 54.)

23.     The individual selected for this position would be responsible for overseeing procurement.  (Pl. Dep. 183 and Ex. 54)  The responsibilities included developing and maintaining relationships with outside vendors, preparing solicitations, and negotiating contracts.  (Pl. Dep. 183 and Ex. 54.)  As such, Amtrak required the successful candidate to have a Bachelor's Degree in Business Administration, three to five years of proven experience in purchasing or material planning or related fields, experience in service and material commodities, and the ability to aggregate commodities into annualized contracts by analyzing markets and in-house competition.  (Pl. Dep. 183-184 and Ex. 54.)

24.     Plaintiff applied for the position in March of 2009 by submitting her resume and an application.  (Pl. Dep. 184-185 and Ex. 55.)

25.     Plaintiff admits that her procurement experience was limited to working as a clerk in the purchasing department years ago.  (Pl. Dep. 183-184.)  She also admits that she did not possess many of the requirements for the position, as she did not have experience preparing bidders lists, solicitations, or awards; experience conducting negotiations; or experience aggregating commodities into annualized contracts.  (Id.)

26.     Nonetheless, Amtrak invited Plaintiff to interview for the position.  (Pl. Dep. 187.)  Plaintiff, however, did not perform well during the interview.  (Osbourne Decl. ¶ 25 and Tab A.)  When asked the standard, written interview questions, she could not provide examples of how she overcame problems she encountered in her current position or what she liked least about her current position.  (Id.)  Plaintiff also displayed minimal evidence of her negotiation skills when she offered an incomplete example of how she negotiated a transaction for a used vehicle.  (Id.)  Based on her poor interview performance and insufficient qualifications, the interview panel determined that Plaintiff did not possess the necessary skill set or experience required for the position.  (Id at ¶ 26.)

27.     On the other hand, the interview panel was impressed by applicant Thomas Gray ("Gray") (Caucasian), and Amtrak offered him the position.  (Osbourne Decl. ¶ 27 and Tab B.)  Gray impressed the interview panel with his responses to the interview questions, which included providing examples of skills he had recently developed and examples of his ability to accomplish unexpected work requests.  (Osbourne Decl. ¶ 30 and Tab C.)  At the time of his interview, Gray had been a Supervisor, Material Control in the Procurement & Materials Management Department for over three years and had also previously worked as a Foreman III and a Machinist.  (Osbourne Dep. 39-40; Osbourne Decl. ¶ 28.)  Through his prior work experiences, Gray had gained a thorough understanding of the materials used throughout the facility, was familiar with the relevant computer applications, and had developed relationships with local suppliers.  (Pl. Dep. 182; Osbourne Decl. ¶ 29 and Tab D.)

28.     Plaintiff admits that she is not familiar with Gray's education or prior work experience.  (Pl. Dep. 182.)

29.     On June 9, 2009, Amtrak informed Plaintiff that she did not receive the promotion.  (Pl. Dep. 185-186 and Ex. 56).

       **c.**     **Plaintiff's August 2009 Application for the Supervisor,**
                   **Material Control Position**

     30.     In August 2009, Plaintiff applied for the Supervisor Material Control position in the Procurement & Materials Management Department for which there were two vacancies.  (Pl. Dep. 186, 189-190 and Ex. 57, 58.)

     31.     Amtrak required qualified applicants to have a Bachelor's degree in business or the equivalent combination of education and experience; proven experience in materials management and warehouse inventory control; work experience in a planning distribution environment; and a working knowledge of various computer systems.  (Pl. Dep. 190-192 and Ex. 57).  Amtrak indicated a preference for applicants with demonstrated experience in "replenishment, forecasting, logistics, distribution, MRP and scheduling, AAMPS modules planning and forecasting."  (Pl. Dep. 190-192 and Ex. 57.)

     32.     Plaintiff and ten other candidates were invited to interview for the position.  (Pl. Dep. 187; Osbourne Dep. 32.)  Although Plaintiff worked as a material control clerk in the 1980s, she lacked proven experience in materials management and in a planning distribution environment.  (Pl. Dep. 144, 191.)  She also admitted she lacked experience in "planning, replenishment, forecasting, logistics, distribution, MRP and scheduling, AAMPS modules planning [or] forecasting."  (Pl. Dep. 190-192 and Ex. 57.)  Additionally, Plaintiff did not perform well during the interview because she did not offer responses to a number of the standard interview questions.  (Osbourne Decl. ¶¶ 32 and Tab E.)  For example, Plaintiff did not provide an example of any changes she had implemented within her work area or of a time she had to discipline or correct a colleague.  (Id.)  Plaintiff also had difficulty responding to technical questions.  (Id.)  The interview panel gave Plaintiff a score of 19 and 20, the lowest scores among all of the candidates.  (Osbourne Decl. ¶¶ 33 and Tab E.)

33.     The interview panel selected the two individuals with the highest total interview ratings to fill the vacancies.  (Osbourne Decl. ¶ 34 and Tabs F-K.)  The panel selected Gevoris McCrary ("McCrary") (African-American), who received scores of 48.5 and 49, and Michael McDaniels ("McDaniels") (Caucasian) who received scores of 46 and 47.  (Id.)

34.     Both McCrary and McDaniels were hired, in part, based on their mechanical background and previous supervisory experience.  (Osbourne Decl. ¶ 35.)  McCrary had over four years of combined managerial experience as a Materials Manager and a Branch Operations Manager at outside companies and was also familiar with DOT procedures. (Osbourne Decl. ¶ 36 and Tab F.)  McDaniels had experience in warehouse inventory, materials management, and production monitoring; he had also supervised as many as twenty-two employees as a Foreman III.  (McDaniels' Dep. 53-61[7]; Osbourne Decl. ¶ 37 and Tab G.)

35.     Plaintiff admitted that she was not familiar with either of the selected candidate's educational backgrounds or with McCrary's work experience.  (Pl. Dep. 188-189.) Although Plaintiff believes that McDaniels worked as a Machinist immediately before his promotion (Pl. 189), McDaniels' application, as well as his own testimony, reflects that he worked as a Machinist, Machinist Tech, Machinist Inspector and was then promoted to a Foreman III in 2007—the supervisory-level union position he held for two years before his promotion to Supervisor, Material Control.  (McDaniels Dep. 12-13, 15, 40; Osbourne Decl. ¶ 38 and Tab G.)

36.     On September 30, 2009, Amtrak informed Plaintiff that she did not receive the promotion.  (Pl. Dep. 192 and Ex. 59).

---

[7] The deposition of Michael McDaniels ("McDaniels Dep.") is located at Exhibit 5 of the Designation of Evidence.

      **d.**    **Plaintiff's Application for the Senior Manager Material Control Position**

37.    In August 2009, Plaintiff applied for the position of Senior Manager Material Control in the Procurement & Materials Management Department by submitting her application and resume.  (Pl. Dep. 195-196 and Ex. 64.)

38.    This position manages the whole Material Control Department, including the Supervisor, Material Control position and the Manager Material Control position.  (Osbourne Decl. ¶ 40.)  The responsibilities of the position included financial oversight of Amtrak's inventory control and all material planning activities.  (Pl. Dep. 195-196 and Ex. 64.)

39.    Amtrak cancelled the position.  (Pl. Dep. 196; Osbourne Decl. ¶ 42.)  As a result, Amtrak did not interview any of the nine applicants, and the position was never filled. (Osbourne Decl. ¶ 43.)

      **e.**    **Plaintiff's Application for the Customer Service Quality Supervisor Position**

40.    In September of 2009, Plaintiff applied for the unionized position of Customer Service Quality Supervisor, located at Amtrak's Miami, Florida facility, for which there were two vacancies.  (Pl. Dep. 192 and Exs. 60, 61.)

41.    While Plaintiff believes these were management positions, the undisputed facts show that they were supervisory-level union positions covered by the American Railway and Airway Supervisors Association ("ARASA") collective bargaining agreement, which governs the process for hiring or promoting individuals into these positions.  (Pl. Dep. 194; Ray Decl. ¶ 5.)  Under the ARASA collective bargaining agreement, these positions were open to all employees, but Amtrak was required to fill these vacancies through the union bidding process by selecting bidders with the most ARASA seniority.  (Ray Decl. ¶ 6.)  If no employees with ARASA seniority bid for the position, the position would be offered to non-ARASA bidders.

(Id.)  Amtrak awarded the positions to Edward Hanson (Caucasian) and Donald Palomo (Asian), both of whom were members of ARASA and the two bidders with the most ARASA seniority. (Pl. Dep. 195 and Ex. 62; Id. at ¶ 7 and Tab A.)  Under the terms of the ARASA collective bargaining agreement, Amtrak had no discretion to select applicants on any basis other than ARASA seniority.  (Ray Decl. ¶ 8.)  Plaintiff was not a member of the ARASA union, and thus, was not awarded the position.  (Id. at ¶ 9; Osbourne Dep. 68.)

42.     On September 28, 2009, Amtrak informed Plaintiff that she did not receive the promotion.  (Pl. Dep. 195 and Ex. 62.)

**f.     Plaintiff's Application for the General Foreman Position**

43.     In September 2009, Plaintiff applied for a General Foreman position, located at Amtrak's Beech Grove facility.  (Pl. Dep. 197 and Exs. 65, 66.)

44.     The individual selected for this position would be responsible for directing major overhaul and repair work and overseeing financial aspects of the operations.  (Pl. Dep. 198-199 and Ex. 65.)  In the job description, Amtrak indicated that applicants must have an Associate's Degree in Engineering or the equivalent combination of education and training; manufacturing experience in transit, railway or utility service, repair and maintenance; and experience in managing unionized employees.  (Pl. Dep. 198-199 and Ex. 65.)  Amtrak indicated a preference for applicants with a Bachelors Degree in Engineering and individuals with experience in repairing and overhauling passenger cars.  (Pl. Dep. 198 and Ex. 65.)

45.     Amtrak did not interview Plaintiff for the General Foreman position because Plaintiff did not meet the minimum qualifications.  (Osbourne Decl. ¶ 45; Pl. Dep. 198-199.)  In fact, Plaintiff admitted that she did not have a degree in engineering; she did not have work experience in transit, railway, or utility service repair and maintenance; and she did not have experience in repairing passenger cars.  (Pl. Dep. 198-199.)

12

46.    Amtrak offered the position to Sidney Rogers ("Rogers") (Caucasian), based on his extensive manufacturing and managerial experience.  (Osbourne Decl. ¶ 46.) Rogers had a Bachelor's degree in Industrial Administration and had most recently worked as a Senior Industrial Engineer, for which he had over twelve years of experience.  (Rogers' Dep. 7, 9-12[8]; Osbourne Decl. ¶ 46 and Tab L.)  He also had experience managing the engineering department for an automotive supplier where he was responsible for meeting production goals, reducing costs, and increasing quality standards.  (Rogers' Dep. 9-12; Osbourne Decl. ¶ 47 and Tab M.)

47.    Plaintiff admits that she is not familiar with Roger's prior work experience (Pl. Dep. 197-198.)

48.    On January 6, 2010, Amtrak informed Plaintiff that she did not receive the promotion.  (Pl. Dep. 200 and Ex. 67.)

>    **g.    Plaintiff's Application for the Director, HR Shared Services Center Position**

49.    In or about November 2009, Plaintiff applied for the position of Director, HR Shared Services Center, located in Wilmington, Delaware.  (Pl. Dep. 232, 237 and Ex. 72; Parker-Smith Decl. ¶ 4 and Tab A[9].)

50.    This high-level management position is responsible for overseeing the overall operation and management of the Human Resources Shared Services Center.  (Pl. Dep. 231-232 and Ex. 72; Parker-Smith Decl. ¶ 5.)  The job description required applicants to have a Bachelor's degree in Human Resources or Business Administration, but Amtrak preferred applicants with a Master's degree.  (Pl. Dep. 232 and Ex. 72.)  Further, Amtrak required

---

[8] The deposition of Sidney Rogers ("Rogers Dep.") is located at Exhibit 6 of the Designation of Evidence.

[9] The declaration of Wanda Parker-Smith ("Parker-Smith Decl.") is located at Exhibit 9 of the Designation of Evidence.

applicants to have "extensive human resources experience in a large organization," supervisory experience, experience developing and evolving an organization that interfaces with employees and vendors, and various other qualifications.  (Pl. Dep. 232 and Ex. 72.)

      51.    Amtrak did not interview Plaintiff for this position because she did not meet the minimum qualifications.  (Parker-Smith Decl. ¶ 6.)  Plaintiff's past human resources experience was limited to 1) her work for the City of Indianapolis HR department over thirty years earlier, where she kept track of City employee salaries, and 2) her responsibilities as a clerk at Amtrak where she keeps track of the hours employees work, enters pay adjustments, and distributes pay checks.  (Pl. Dep. 45, 47.)  Additionally, Plaintiff confirmed that she did not have a Master's Degree in Human Resources, and she did not have extensive human resources experience, direct supervisory experience, experience developing and evolving organizations, or a number of the other qualifications and skills Amtrak required.  (Pl. Dep. 232-234.)

      52.    Amtrak hired Alice Ingalsbe ("Ingalsbe") (Caucasian) to fill the position. (Osbourne Dep. 48-49.)  Ingalsbe had a Master's of Business Administration, over ten years of human resources experience, and had most recently worked as a director of a human resources center for the prior four years.  (Parker-Smith Decl. ¶¶ 7-8 and Tabs B, C.)

      53.    Plaintiff admitted that she does not know Ingalsbe.  (Pl. Dep. 234-235.)

      54.    On May 17, 2010, Amtrak informed Plaintiff that she did not receive the promotion.  (Pl. Dep. 235 and Ex. 74).

      **h.    Plaintiff's Application for the Manager, Material Control Position**

      55.    In or about June 2010, Plaintiff applied for the position of Manager, Material Control in the Procurement & Materials Management Department at Amtrak's Beech Grove facility.  (Pl. Dep. 202-203 and Exs. 68, 69.)

56.     This high-level position is one level above Supervisor, Material Control, a position to which Plaintiff applied twice.  (Pl. Dep. 223-224; Osbourne Decl. ¶ 49.)  Amtrak required applicants for the Manager, Material Control position to have managerial experience; experience in warehouse inventory control, planning and distribution; and a working knowledge of Amtrak's AAMPS and ASAP systems.  (Pl. Dep. 202 and Ex. 68.)  The job description also indicated a preference for experience with scheduling production control in a railroad maintenance facility and stated that knowledge of SAP was a plus.  (Id.)

57.     Plaintiff was not granted an interview because she did not provide any indication in her application materials that she met the minimum qualifications of the position. (Pl. Dep. 203 and Ex. 69; Osbourne Decl. ¶ 50.)  Plaintiff admits that she did not have any supervisory experience, that she did not have any experience scheduling production, and that she had not utilized Amtrak's AAMPS or ASAP systems.  (Pl. Dep. 202-203.)  She also admits that had Amtrak selected her to fill the position, she would be holding a position that was two levels above her current Statistical Clerk position.  (Pl. Dep. 223-226; Osbourne Decl. ¶ 51.)  Plaintiff indicated that she could not recall any employees who had been promoted into management positions that were two levels above their current role.  (Pl. Dep. 225-226.)

58.     After interviewing the qualified applicants, Amtrak offered the position to Damon Bryan ("Bryan") (Caucasian) who began working on August 8, 2009.  (Osbourne Decl. ¶ 52 and Tab N.)  At the time of his interview, Bryan had been a warehouse supervisor where he was responsible for shipping and receiving activities and monitoring inventory.  (Id. at ¶ 53.)  Amtrak hired Bryan because he had over ten years of work experience as a material control manager in warehouse and manufacturing environments, he had experience managing unionized employees, and he was familiar with the SAP inventory management system.  (Id. at ¶ 54 and Tabs N, O.)

15

59.    Plaintiff admits that she is unfamiliar with Bryan's work experience and educational background.  (Pl. Dep. 221-222.)

### E.    EEOC Charges

60.    On April 25, 2008, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Charge, No. 846-2008-19649, alleging race and gender discrimination against Amtrak for its failure to promote Plaintiff to Supervisor, Material Control, for which plaintiff applied in July 2007 and was denied in September 2007.  (Pl. Dep. 34-35; Ex. 5.)  The EEOC issued a Dismissal and Notice for Right to Sue on February 13, 2009.  (Pl. Dep. 35-36; Ex. 6.)

61.    On August 30, 2010, Plaintiff filed another EEOC Charge, No 470-2010-03332, alleging race and gender discrimination in connection with a training she did not attend.  (Pl. Dep. 36-37 and Ex. 7.)  She also alleged race and gender discrimination in Amtrak's failure to promote her to Manager, Material Control and its decision to award the position to an outside candidate, as well as Amtrak's decision not to interview Plaintiff or provide her a letter notifying her that she had not been selected for the position.  (Id.)  Plaintiff's Charge, intake questionnaire, and the EEOC investigation notes make mention of no other position denials, and the EEOC did not stray from this position in its investigation of her claims.  (Pl. Dep. 36-37 and Ex. 7; Manos Decl. ¶¶ 6-7 and Tabs C, D[10].)  The EEOC issued a Dismissal and Notice of Right to Sue on October 26, 2010.  (Pl. Dep. 36-38 and Ex. 8.)

## III.    PROCEDURAL HISTORY

Plaintiff filed her Complaint in this Court on January 24, 2011, alleging race discrimination in violation of 42 U.S.C. §2000e ("Title VII"), 42 U.S.C. §1981 ("Section 1981"), and Indiana Civil Rights Law I.C. 22-9-1 (ICRL), and intentional infliction of emotional

---

[10] The declaration of Valerie Manos ("Manos Decl.") is located at Exhibit 10 of the Designation of Evidence.

distress under Indiana common law.  Amtrak filed a Motion to Dismiss Plaintiff's Complaint, and the Court granted the motion as to Plaintiff's ICRL claim only on June 17, 2011.  The parties have engaged in written discovery, and Amtrak deposed Plaintiff on December 7, 2011.  Plaintiff deposed Sidney Rogers and Michael McDaniels on January 12, 2012, and three Company 30(b)(6) representatives on January 19, 2012.  Amtrak now files this motion seeking summary judgment on all pending claims in Plaintiff's Complaint.

IV.   **ARGUMENT**

   A.   **Summary Judgment Standard.**

   Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Benuzzi v. Bd. of Educ. of City of Chicago, 647 F.3d 652, 662 (7th Cir. 2011).  Summary judgment must be entered against one who fails to make a showing sufficient to establish the existence of "a triable issue of fact on all essential elements of its case."  Lewis v. CITGO Pet. Corp., 561 F.3d 698, 702 (7th Cir. 2009) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  "Mere speculation or conjecture will not defeat a summary judgment motion."  McCoy v. Harrison, 341 F.3d 600, 604 (7th Cir. 2003).  Rather, though inferences drawn from the facts must be viewed in the light most favorable to Plaintiff, the Court need make only reasonable inferences.  Mills v. Health Care Serv. Corp., 171 F.3d 450, 459 (7th Cir. 1999).

**B.** **Because Plaintiff Failed To Exhaust Her Administrative Remedies On Most Of Her Title VII Failure To Promote Claims And Her Disparate Impact Claim, They Are Barred As A Matter Of Law.**

Plaintiff's Title VII claims are limited to only those that have been exhausted through the timely filing of an EEOC charge.[11]  See Gawley v. Indiana Univ., 276 F.3d 301, 313 (7th Cir. 2001).  "Generally, a Title VII plaintiff may bring only those claims that were included in her original Equal Employment Opportunity Commission (EEOC) charge, or that are *like or reasonably related to* the allegations of the charge or growing out of the charge."  Id. (emphasis added); Gee v. Metaldyne Corp., 2008 WL 4936865, *2-4 (S.D. Ind. Nov. 14, 2008).  In order to fall within the scope of the charge, the "charge and the complaint must, at a minimum, describe the same conduct and implicate the same individuals."  Id.; see also Cheek v. W. & S. Life Ins. Co., 31 F.3d 497, 501 (7th Cir. 1994) (explaining that the exhaustion requirement is met if "the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge").

However, courts within the Seventh Circuit have held that denials of promotions are not "like or reasonably related" to a claim in a Charge where Plaintiff alleges she was discriminatorily denied one promotion.  Geldon v. S. Milwaukee Sch. Dist., 414 F.3d 817, 820 (7th Cir. 2005) (holding that an EEOC charge alleging plaintiff was denied promotion to assistant painter/relief custodian could not serve as basis for lawsuit challenging the failure to promote plaintiff to substitute custodian); McGoffney v. Vigo Cty. Div. of Family and Soc. Servs., 389 F.3d 750, 752-53 (7th Cir. 2004) (holding that Plaintiff's EEOC Charge that only

---

[11]   Plaintiff filed two EEOC Charges against Amtrak.  She filed her first Charge on April 10, 2008, and the EEOC issued a Right to Sue Letter on February 13, 2009.  All claims arising out of this charge are waived since she failed to file her lawsuit within 90 days of receipt of the Right to Sue Letter.  See Fiona Feng Chen v. Northwestern Univ., 175 Fed. Appx. 24, 26 (7th Cir. 2005) (affirming summary judgment in part because plaintiff waived all claims arising out of an earlier EEOC Charge since she did not bring suit within 90 days of receiving the EEOC Right to Sue Letter).  Plaintiff filed her second Charge on August 30, 2010, and the EEOC issued a Right to Sue Letter on October 26, 2010.  Plaintiff timely filed her Complaint on January 24, 2011.

contained general allegations of failure to promote was insufficient to put the employer on notice as to which specific positions she was talking about).  Rather, Plaintiff must give some indication in her Charge to put the employer on notice that she is challenging more than just the single position specifically identified.  Gee, 2008 WL 4936865 at *4 (holding that plaintiff's "charge that he was not promoted in January 2006 was not sufficient to put Metaldyne and the EEOC on notice that he was also complaining that he had been passed over for promotions in August and November 2005"); Irby v. Board of Educ. of City of Chicago,  2011 WL 1526732, *4 (N.D. Ill. Apr. 20, 2011) ("The fact that Irby's EEOC charge and her First Amended Complaint both assert claims for failure to promote is not sufficient to demonstrate that there is a 'reasonable relationship between the allegations in the charge and the claims in the complaint'").

    Similarly, numerous courts have recognized that plaintiffs cannot rely on an EEOC charge containing allegations of intentional discrimination or harassment to exhaust their administrative remedies on a disparate impact claim.  In Diersen v. Walker, 117 Fed. Appx. 463, 465-6 (7th Cir. 2004), plaintiff's underlying EEOC charge against the Government Accountability Office alleged disparate treatment and retaliation, but his subsequent court complaint alleged that the agency's affirmative action policies had a disparate impact on non-minority employees.  The Seventh Circuit upheld the district court's entry of summary judgment for defendant, finding that plaintiff's disparate impact claims were not "reasonably related" to his underlying EEOC charge.  The disparate impact claim was "conceptually and factually distinct from his allegations of disparate treatment and retaliation, and pursuing the latter does not exhaust the former."  Id. at 465–66; see Juszczak v. Blommer Chocolate Co., 1999 WL 1011954, at *4–5 (N.D. Ill. Sept. 30, 1999) (holding that "a general averment of discrimination" is not sufficient to bring a disparate impact claim within the scope of an EEOC charge otherwise complaining of disparate treatment); Liesen v. City of Shelbyville, 968 F. Supp. 409, 421–22

19

(S.D. Ind. 1997) (dismissing disparate impact claim on summary judgment where it exceeded the scope of the underlying charge alleging sex discrimination).

Here, Plaintiff's failure to promote claim is limited to only the Manager Material Control position, which is specifically addressed in her second EEOC Charge.  Plaintiff's Charge makes mention of no other positions, and in fact, the EEOC did not stray from this position in its investigation of her claims.  Stmt. Facts at ¶61.  Plaintiff's EEOC intake form lists only the Manager Material Control position, and the EEOC investigative notes from interviews with Plaintiff again are limited to this single position.  Id.  Accordingly, because the charge only states that the denial of one promotion was at issue, and because the EEOC also confined its investigation to the lone identified position, Plaintiff exhausted her administrative remedies only as to this one position.  Gee, 2008 WL 4936865 at *2-4.  For purposes of Title VII, all other alleged promotion denials have been waived.

Likewise, Plaintiff failed to exhaust her administrative remedies as to her disparate impact claim.  Plaintiff's second EEOC Charge (the only charge at issue) does not reference any facts that would suggest she was asserting a claim for, or that would support a claim for, disparate impact.  It does not reference any neutral Amtrak policy that negatively impacted her and other African-American employees.  Stmt. Facts at ¶61.  Her Charge specifically states:  "I was not interview [sic] nor did I receive a rejection letter, which has been customary practice in the past . . . this isn't /hasn't been the practice."  Id.  In fact, Plaintiff's Charge – on its face – reflects that she was complaining that Amtrak failed to follow its standard practice in this instance, not that some practice or policy is discriminatory.  Id.  Because Plaintiff failed to make any mention of a corporate policy upon which a disparate impact claim could be based, she has failed to exhaust her administrative remedies.  See Juszczak, 1999 WL 1011954, at *5 (holding that general averment in EEOC charge that employer "discriminated against him" was

20

insufficient to exhaust remedies on disparate impact claim).  Thus, the Court should grant

Amtrak's motion for summary judgment as to Plaintiff's disparate impact claim.

### C. Plaintiff's Section 1981 Failure To Promote Claims Are Limited To Only Those Denials That Fall Within The Two-Year Statute Of Limitations.

Plaintiff's failure to promote claims brought under 42 U.S.C. §1981 are limited to those

denials of promotion that occurred in the two-year period prior to Plaintiff's filing of her

complaint.  Section 1981 does not specify a statue of limitations; rather, the Supreme Court has

held that a four year statute of limitations applies to claims that are cognizable as a result of the

1991 Amendment to Section 1981, but that the *two-year* statute of limitations, borrowed from

state tort actions, applies to causes of action that could have been brought under the original

version of the statute.  Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004); see also Gee,

2008 WL 4936865 at *5-8 (explaining that causes of action that could be brought prior to the

1990 enactment are subject to a two-year statute of limitation based on Indiana state tort law).  A

failure to promote claim arises under the original Section 1981 when the "promotion rises to the

level of an opportunity for a new and distinct relation between the employee and the employer."

Id. (citing Patterson v. McLean Credit Union, 491 U.S. 164, 185 (1989)).  This "new and

distinct" relationship is formed in various circumstances, including where the promotion

involves a change from a non-supervisory to a supervisory position or a union to a non-union

position, where the party's duties could change significantly, or where the promotion was not

routinely granted as a result of good performance.  Id.; see Hithon v. Tyson Foods, Inc., 144 Fed.

Appx. 795, 799 (11th Cir. 2005) (holding that the failure to promote claim was cognizable under

1981 because the promotion sought to a complex-wide human resources manager would have

resulted in a new and distinct relationship); Kim v. Nash Finch Co., 123 F.3d 1046, 1055 (8th

Cir. 1997) (holding that the promotion from leadman to foreman would result in a new and distinct relationship because it involved new responsibilities).

Here, the two-year statute of limitations applies to Plaintiff's failure to promote claims because every management-level promotion sought by Plaintiff would have resulted in a new and distinct relationship. Each position Plaintiff sought constituted a move from her current clerical union position to a non-union position[12] and from a non-supervisory to a supervisory position. Stmt. Facts at ¶13; 19-61. Additionally, as Plaintiff admitted, a promotion to a management position also includes an increase in pay and change in benefits. See Compl. at ¶17. Because the promotions would have resulted in a new relationship between Plaintiff and Amtrak, her failure to promote claims are cognizable under the original Section 1981 and are therefore subject to a two-year statute of limitations. See Gee, 2008 WL 4936865 at *4-9. Thus, Plaintiff's failure to promote claims are limited to only those denials of promotion that occurred on or after January 24, 2009, two years before she filed her Complaint.

**D.      The Undisputed Evidence Does Not Support Plaintiff's Failure To Promote Claims As To Any Of The Positions To Which She Applied.**

Although Title VII and § 1981 "differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical." Sublett v. John Wiley & Sons, Inc., 463 F.3d 731, 736 (7th Cir. 2006). Where, as here, Plaintiff fails to present any direct evidence of race discrimination under Title VII or Section 1981, she must present a *prima facie* case of discrimination under the indirect burden-shifting method set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). In order to do so, Plaintiff must bring forth evidence showing that she: (1) is a member of a protected class; (2) had the requisite qualifications for

---

[12]     The only exception to this is the Customer Service Quality Supervisor position to which Plaintiff applied, which was a union-level supervisory position. Stmt. Facts at ¶41. This too would have been a promotion with an increase in pay and responsibilities. Id.

promotion; (3) was denied the promotion by defendant; and (4) a member of the non-protected class who was not better qualified was promoted instead.  Jackson v. City of Chicago, 552 F.3d 619, 622 (7th Cir. 2009); Dandy v. UPS, Inc., 388 F.3d 263, 273 (7th Cir. 2004).

Critically, in order to prove the fourth prong of her *prima facie* case, Plaintiff must demonstrate at the least that she was as qualified as the person outside of the protected class who received the promotion, i.e., they were similarly situated.  However, to be similarly situated to another employee, the plaintiff must show that the employee is "directly comparable in all material respects."  Jordan v. City of Gary, Ind., 396 F.3d, 825, 835 (7th Cir. 2005); Brown v. Ill. Dept. of Natural Resources, 499 F.3d 675,682-3(7th Cir. 2007) (holding that plaintiff could not establish that she was similarly situated to selected candidates because selected candidates possessed "far greater experience, particularly, supervisory experience" and did not share plaintiff's past performance issues); Ellis v. Fedex Smartpost, Inc., 346 Fed. Appx. 92, 93-94 (7th Cir. 2009) (explaining that plaintiff had not shown the positions were given to people who were similarly or less qualified than he because the selected applicants were promoted based on their communication skills, work ethic, positive attitudes, and willingness to seek out additional responsibility); Sublett, 463 F.3d at 738 (finding that the qualifications of the selected candidates were "undeniably superior" because Plaintiff had no supervisory experience, whereas the selected candidates had two and nine years of supervisory experience).  In determining whether two applicants are similarly situated, courts consider a number of factors, including whether they held the same or equivalent positions at the time of the promotion decision, had similar job duties, or reported to the same supervisor.  See Brown, 499 F.3d at 682-4; Hoffman-Dombrowski v. Arlington Intern. Racecourse, Inc., 254 F.3d 644, 651 (7th Cir. 2001) (explaining that two applicants were not similarly situated because they did not hold similar positions at the time of the decision).

23

Plaintiff cannot establish a *prima facie* case with respect to any of the positions to which she applied, because she can provide no evidence to show both that 1) she had the requisite qualifications for the posted positions, and 2) she was as qualified as, or more qualified than, the selected applicants outside of the protected class.

a.      ***Customer Service Quality Supervisor position.***

Plaintiff's failure to promote claim for the Customer Service Quality Supervisor position fails because she cannot establish the fourth element of the *prima facie* case.  The Customer Service Quality Supervisor positions were union-level (ARASA) supervisory positions that were awarded to Donald Palomo (Asian) and Edward Hanson (Caucasian) based entirely on their ARASA seniority, as required by the ARASA collective bargaining agreement.  Stmt. Facts at ¶61.  Amtrak did not, and could not, exercise any discretion in selecting candidates, because it was bound to follow the seniority provisions of the collective bargaining agreement and select the two candidates with the most seniority – Palomo and Hanson.  Id.  Therefore, Plaintiff cannot establish the fourth element of the *prima facie* case, and her claim fails.

b.      ***Senior Manager Material Control and Supervisor Material Control (May 2009) positions.***

Plaintiff's failure to promote claim for the Senior Manager Material Control position fails for the simple reason that Amtrak did not hire anyone to fill this position.  Rather, Amtrak cancelled this posting, and none of the nine applicants was awarded the position.  Stmt. Facts at ¶38-39.  Because Amtrak did not fill this position, this claim fails as well.  Sambrano v. Mabus, 2010 WL 5110206, *3, fn. 9 (N.D.Ill. Dec. 8, 2010) ("By definition, the fact that the job was cancelled means that Navy did not hire someone outside the protected group for the job.  Simply put, Sambrano cannot create an inference of discrimination based on his failure to receive that specific promotion").

24

Likewise, Plaintiff's failure to promote claim as to the Supervisor Material Control position to which she applied in March 2009 fails because Plaintiff voluntarily withdrew herself from consideration for this position *by cancelling her own interview* on May 11, 2009.  Stmt. Facts at ¶21.  Indeed, Plaintiff memorialized this in an email.  Id.  Because Plaintiff withdrew herself from consideration for this position, she cannot now point the finger at Amtrak for failing to promote her.  See Goodum v. White, 2006 WL 566469, *20 (N.D. Ill. Mar. 3, 2006) (holding that an employee who does not properly apply for a position cannot bring a claim for discrimination).

### c.    *Contracting Agent position.*

Like so many other positions, Plaintiff's failure to promote claim for the Contracting Agent position fails because Plaintiff did not meet the minimum qualifications, and because she was not similarly situated to Gray, the selected applicant.

Plaintiff's work as a clerical employee within various departments in Amtrak did not provide her with the requisite experience for this position.  In fact, Plaintiff admitted that her only relevant procurement experience was working as a clerk in the purchasing department decades earlier.  Stmt. Facts at ¶25.  Further, Plaintiff admitted that she did not possess many of the requirements for the position, including experience preparing bidders lists, solicitations, or awards; experience conducting negotiations; or experience aggregating commodities into annualized contracts.  Id.

In contrast, Gray, a long-term Amtrak employee, was far more qualified for the position than Plaintiff due to his extensive experience and superior interview performance.  Gray's position at the time of his hire, Supervisor Material Control, afforded him familiarity with the warehouse materials, and established relationships with local suppliers.  Stmt. Facts at ¶27.

25

Additionally, Gray's past experience in Amtrak's Mechanical Department gave him a thorough understanding of the parts and materials used throughout the facility.  Id.

Moreover, unlike Plaintiff, Gray performed well during his interview, especially as to the examples of what skills he had recently developed and his ability to accomplish unexpected requests.  Id.  Plaintiff, on the other hand, failed to adequately answer questions during the interview and displayed minimal negotiation skills, a critical skill for the position.  Stmt. Facts at ¶26.  In short, Gray stood head and shoulders above Plaintiff in nearly every way.  Therefore, Plaintiff cannot establish the second or fourth elements of a *prima facie* case, and her claim fails.

### d.  *Supervisor Material Control position (August 2009).*

Plaintiff's failure to promote claim as to the Supervisor Material Control position to which she applied in August 2009 also fails because she did not meet the minimum qualifications for the position and is not similarly situated to the chosen applicants: McCrary (African-American) and McDaniels (Caucasian).

Plaintiff's past experience as a clerk in various departments did not qualify her for this position.  Though she had worked as a clerk in the material control department some twenty years earlier, she lacked proven experience in materials management and in a planning distribution environment.  Stmt. Facts at ¶ 10, 32.  She also lacked experience in purchasing, planning replenishment, forecasting, logistics, distribution, MRP and scheduling, AAMPS modules planning and forecasting, all areas where Amtrak stated a preference for experienced candidates.  Stmt. Facts at ¶ 10, 32.

Additionally, Plaintiff cannot show that she was similarly situated to McCrary and McDaniels, the selected candidates, due to their superior knowledge, extensive qualifications, and favorable performance in the interview process.  As an initial matter, Amtrak notes that McCrary, one of the selected candidates, is African-American, so Plaintiff's claim as to the

position he was awarded fails on that ground alone.  Stmt. Facts at ¶33; Jordan, 396 F.3d at 833

(affirming dismissal of plaintiff's failure to promote claim because plaintiff is a member of the

same protected class as the chosen applicant).  Even setting that aside, however, McCrary

possessed four years of combined managerial/supervisory experience as a Materials Manager

and a Branch Operations Manager; he also had the requisite DOT training, all qualifications

Plaintiff did not possess.  Stmt. Facts at ¶34.  Similarly, McDaniels had demonstrated experience

in warehouse inventory, materials management, and monitoring production; and he has extensive

supervisory experience, having supervised as many as twenty-two employees in his role as

Foreman III at the time of his promotion.  Id.  Both McCrary and McDaniels were hired, in part,

based on their mechanical background and supervisory experience, qualifications Plaintiff did

not possess.

Additionally, unlike Plaintiff, McCrary and McDaniels performed extremely well in their

interviews and garnered the highest interview scores of any candidate.  McCrary received scores

of 49 and 48.5, and McDaniels received scores of 46 and 47.  Stmt. Facts at ¶33.  In contrast,

Plaintiff received interview scores of 19 and 20 due to her poor answers or lack of response to

many questions.  Stmt. Facts at ¶32.  The undisputed record evidence demonstrates that Plaintiff

cannot establish the second or fourth elements of the *prima facie* case, and her claim fails.

### e.    *General Foreman position.*

Plaintiff's failure to promote claim for the General Foreman position fails because she

did not possess the minimum qualifications for the position, and because she was not as qualified

as, or more qualified than, Rogers, the successful candidate.  In fact, Plaintiff admitted that she

lacked a number of critical requisites for the position, including a degree in engineering or a

related field; experience in transit, railway, or utility service repair and maintenance; and

experience in repairing passenger cars.  Stmt. Facts at ¶45.  While Plaintiff had experience with

27

her own TCU collective bargaining agreement as a former union representative (a fact Plaintiff admitted she did not disclose on any application or resume), Plaintiff admitted that her experience in this role was limited to receiving grievances from union employees and passing them along to the union office.  Stmt. Facts at ¶18.

Rogers, on the other hand, possesses a Bachelor's degree in Industrial Engineering Administration, has over twelve years of experience as a Senior Industrial Engineer, and has experience as a manager of an engineering department for an automotive supplier where he was responsible for meeting production goals, reducing costs, and increasing quality standards.  Stmt. Facts at ¶46.  For these reasons alone, Plaintiff cannot establish that she was as qualified as, or more qualified than, Rogers.  Again, Plaintiff cannot establish the second or fourth elements of the *prima facie* case, and her claim fails.

### f.    *Director, HR Shared Services Center position.*

Plaintiff's failure to promote claim for the Director, HR Shared Services Center position also fails because Plaintiff, a clerical employee, was patently unqualified to fill a position overseeing the operation and management of a human resources services center.  Even if the Court credited Plaintiff's characterization of some of her Amtrak clerical duties as being related to human resources, Plaintiff does not possess the extensive human resources experience required for this high-level management position.  Stmt. Facts at ¶51.  Additionally, her past work for the City of Indianapolis Human Resources department more than thirty years earlier – consisting of manually tracking employee salary information – hardly qualified her for the position.  Id.  Aside from lacking the necessary Human Resources experience, Plaintiff failed to meet a number of the other qualifications, including direct supervisory experience and experience developing and evolving organizations.  Id.

In contrast, Ingalsbe's superior qualifications and education clearly reflect that Plaintiff is not as qualified as, or more qualified than, Ingalsbe.  Notably, Ingalsbe has a Masters of Business Administration and over ten years of prior human resources experience.  Stmt. Facts at ¶52. Ingalsbe had most recently worked as a director of a human resources center for four years, a position with starkly different job duties and responsibilities from Plaintiff's clerical work history.  Id.  The undisputed record evidence demonstrates that Plaintiff cannot establish the second or fourth elements of the *prima facie* case, and her claim fails.

### g.   *Manager, Material Control position.*

Plaintiff's failure to promote claim for the Manager, Material Control position also fails because Plaintiff failed to meet the minimum qualifications for the position, and she was not as qualified as, or more qualified than the selected applicant.  In fact, in applying for this position, Plaintiff sought elevation from her hourly, clerical position to a management position at least two levels of supervision above her position.  Stmt. Facts at ¶57.  Notably, Plaintiff could not recall *any* employees who had bypassed a step in management by circumventing a supervisory role and going directly into a manager position.  Id.

Setting all of this aside, however, Plaintiff admitted that she failed to meet the minimum qualifications for the position.  As Plaintiff testified, she possessed no supervisory or scheduling production experience, and she had not utilized Amtrak's AAMPS or ASAP systems, all qualifications specifically listed in the job description.  Stmt. Facts at ¶56-57.

Moreover, Bryan (Caucasian) was far more qualified than Plaintiff for the position because of his significant supervisory and material control experience.  Unlike Plaintiff, Bryan possessed over ten years of work experience as a Material Control Manager in a warehouse and manufacturing environment immediately prior to his hire into the same position at Amtrak, had experience managing a unionized workforce, and he was familiar with the SAP inventory

29

management system.  Stmt. Facts at ¶58.  The evidence demonstrates that Plaintiff cannot

establish the second or fourth elements of the *prima facie* case, and her claim fails.

**E.      Even If Plaintiff Somehow Could Establish A *Prima Facie* Case Of Race
         Discrimination, She Cannot Overcome Amtrak's Legitimate, Non-
         Discriminatory Reasons For Hiring Each Successful Candidate.**

If Plaintiff were able to present evidence to support her *prima facie* case (which she

cannot), the burden then would shift to Amtrak to produce a legitimate, nondiscriminatory reason

for each hiring decision.  Stockwell v. City of Harvey, 597 F.3d 895, 901 (7th Cir. 2010);

Millbrook v. IBP, Inc., 280 F.3d 1169, 1174-5 (7th Cir. 2002).  This burden is a light one; any

rationale honestly believed precludes a finding of discrimination.  Bd. of Tr. of Keene State Coll.

v. Sweeney, 439 U.S. 24, 25 (1978).  Once defendant proffers a legitimate, non-discriminatory

reason for its hiring decision, the burden shifts back to Plaintiff to prove pretext by showing that

"(1) the employer's non-discriminatory reason was dishonest and (2) the employer's true reason

was based on a discriminatory intent."  Brown, 499 F.3d at 683.  In the failure to promote

context, if relying on comparative qualifications to establish pretext, plaintiff's qualifications

must be so superior that no reasonable person in the exercise of impartial judgment could have

selected another individual.  Jordan, 396 F.3d at 834; Wright v. Richmond Power and Light,

2005 WL 1025769, *3 (S.D. Ind. Apr. 21, 2005).

As detailed above, Amtrak has proffered legitimate, non-discriminatory reasons for each

of its hiring and promotion decisions.  In short, Amtrak hired each of the selected candidates

based on their superior qualifications and experience as well as their impressive interview

performance, and rejected Plaintiff due to her lack of qualifications for every position she sought

and poor interview performance.  See supra, Section IV.D.a-g.

Moreover, as detailed above, Plaintiff cannot demonstrate that Amtrak's reasons for

selecting the successful candidates merely are a pretext for race discrimination, because she

cannot even show that she was *as* qualified, let alone *more* qualified, than any of the selected

applicants.  Id.  Indeed, not only can Plaintiff not demonstrate that she was as qualified as, or

more qualified than, the successful candidates, she acknowledges that she did not meet the

minimum qualifications for any of the positions she sought.  Despite these facts, Plaintiff

maintains she should have been promoted.  Plaintiff cannot demonstrate pretext merely by

making the unfounded, bald assertion that she should have been promoted, and summary

judgment should be granted to Amtrak accordingly.  Millbrook, 280 F.3d at 1181.

### F.   Amtrak Is Entitled To Summary Judgment On Plaintiff's Disparate Impact Claim, Because She Lacks Standing To Pursue It And Has Adduced No Evidence To Support It.

Even if Plaintiff did have a timely disparate impact claim, which she does not, it would,

nonetheless, fail as a matter of law because Plaintiff: (1) lacks standing to pursue such a claim;

(2) cannot identify a neutral policy she challenges; and (3) cannot present any of the necessary

evidence to support such a claim.[13]

#### a.   *Even If Plaintiff Had Exhausted Her Administrative Remedies, She Has No Standing To Allege A Disparate Impact Claim, Because She Was Not Qualified For Any Of The Positions She Sought.*

The Seventh Circuit requires that "an individual Title VII Plaintiff, who alleged disparate

impact in connection with a hiring or promotion decision, must establish that he was otherwise

qualified for the position he sought."  Davidson v. Citizens Gas & Coke Utility, 470 F. Supp. 2d

934, 941 (S.D. Ind. 2007) (relying on Connecticut v. Teal, 457 U.S. 440, 451 (1982); see Farrell

v. Butler Univ., 421 F.3d 609, 617 (7th Cir. 2005) (granting summary judgment on plaintiff's

---

[13]   Amtrak assumes that Plaintiff asserts her Disparate Impact claim under Title VII, though no basis is specified in Count III of the Complaint.  To the extent Plaintiff alleges a disparate impact claim under Section 1981, it fails as a matter of law.  It is well settled in the Seventh Circuit that claims of discrimination under Section 1981 require proof of intentional discrimination.  Majeske v. Fraternal Order of Police, Local Lodge No. 7,  94 F.3d 307, 312 (7th Cir. 1996).  Because disparate impact claims do not require a showing of wrongful intent, 1981 does not support such claims.  Stevens v. Housing Authority of South Bend, 720 F. Supp.2d 1013, 1028 (N.D. Ind. 2010) ("disparate impact is insufficient to prove a Section 1981 claim").

claims because she failed to show that she had been injured by the challenged practice);

Melendez v. Ill. Bell Telephone Co., 79 F.3d 661, 667-8 (7th Cir. 1996) (explaining that a Title VII plaintiff has no standing to bring a disparate impact claim unless he can show that his injury was a result of the employment policy he challenged, and not for some other reason).

   As detailed above in section IV.D.a-g, Plaintiff failed to meet the basic qualifications for the promotions for which she applied.  Therefore, Plaintiff cannot show that any challenged policy or practice caused her injury or kept her from being promoted within Amtrak.  Because Plaintiff has failed to show a cognizable injury caused by a facially neutral policy, she has no standing to bring a disparate impact claim.

>   **b.**     ***Plaintiff Has Also Failed To Point To Any Facially Neutral Employment Policy About Which She Complains, Or Any Evidence To Support A Claim That Some Policy Had A Discriminatory Impact.***

   Even if Plaintiff had exhausted her administrative remedies under Title VII and had standing, Plaintiff cannot present any evidence in support of her disparate impact claim.  Unlike a disparate treatment claim under Title VII, where a court determines whether or not an employee has been treated differently because of her race, a disparate impact claim requires a court to consider whether a facially neutral employment practice has had a disparate impact on a protected class.  Davidson, 470 F. Supp. 2d at 940 (citing Connecticut v. Teal, 457 U.S. 440, 446 (1982)).  In order to prove her *prima facie* case, Plaintiff must: 1) "isolate and identify 'the specific employment practices that are allegedly responsible for any observed statistical disparities", and 2) "demonstrate causation by offering statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotion because of their membership in protected group."  Farrell, 421 F.3d at 616 (citing Bennett v. Roberts, 295 F.3d 687, 698 (7th Cir. 2002)).  If Plaintiff can establish her *prima facie*

case, the burden shifts to the employer to demonstrate that "the employment practice has a manifest relationship to the particular employment in question." Settles v. Ill. Dept. of Human Servs., 42 Fed. Appx. 872, 875 (7th Cir. 2002); Ricci v. DeStefano, 129 S.Ct. 2658, 2672-4 (2009). "If the employer satisfies that required showing, a plaintiff may still prevail if he shows that the employer was using the practice as a mere pretext for discrimination." Id.

Plaintiff has not identified, not can she, any facts to support her disparate impact claim. Critically, she has not pointed to a single facially neutral employment practice that purportedly led to a disparate impact based on race. Greater Indianapolis Chapter of the N.A.A.C.P. v. Ballard, 741 F. Supp. 2d 925, 939 (S.D. Ind. 2010) ("A neutral employment policy is the 'cornerstone' of any disparate impact investigation.").

Even further, Plaintiff has failed to present *any* statistical evidence or data in support of her disparate impact claim. Plaintiff's own bald accusations, unsupported by the proper statistical evidence, are insufficient to sustain her disparate treatment claim. See Settles, 42 Fed. Appx. at 875 (dismissing disparate impact claim because Plaintiff offered only his suspicions that the employer "groomed" select employees by training them to perform higher skilled jobs so that they would be first in line for promotions, and he admitted that he did not know what training, if any, these employees received); Farrell, 421 F.3d at 617 (dismissing plaintiff's disparate impact claim because her proffered evidence was too individualized and did not encompass evidence of a disparate impact on women generally); Vitug v. Multistate Tax Comm'n., 88 F.3d 506, 512 (7th Cir. 1996) (dismissing a disparate impact claim because plaintiff failed to offer any statistical evidence and presented only expert witnesses who made conclusory allegations unsupported by statistics or data). Accordingly, summary judgment should be granted to Amtrak on this claim as well.

**G.    Amtrak Is Entitled To Summary Judgment On Plaintiff's Intentional Infliction Of Emotional Distress Claim Because She Has Failed To Show That Amtrak Engaged In Extreme Or Outrageous Conduct Or Acted With Intent To Cause Her Emotional Distress.**

Plaintiff's intentional infliction of emotional distress claim is also wholly without any factual support and should be dismissed.  In order to survive summary judgment, Plaintiff must point to facts that show that she was subjected to "extreme and outrageous conduct intentionally or recklessly [undertaken that] causes severe emotional distress."  Cullison v. Medley, 570 N.E.2d 27, 31 (Ind. 1991).  This is no easy task; Indiana courts have repeatedly held that liability has been found only when:

> [T]he conduct has been so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Powdertech, Inc. v. Joganic, 776 N.E.2d 1251, 1264 (Ind. Ct. App. 2002) (citing Conwell v. Beatty, 667 N.E.2d 768, 777 (Ind. Ct. App. 1996)).

In fact, routine employment decisions, such as termination, failure to hire, promote, or changes to the employment situation rarely form the basis of an intentional infliction of emotional distress claim.  Rather, "emotional distress claims based solely on adverse employment decisions do not involve the type of 'extreme and outrageous conduct' that supports such a tort claim."  Tsitsopoulou v. Univ. of Notre Dame 2011 WL 839669, *4 (N.D. Ind. Mar. 7, 2011); see also Harriston v. Chicago Tribune Co., 992 F.2d 697, 703 (7th Cir. 1993) (affirming dismissal of plaintiff's emotional distress claim based on former employer's alleged harassment and discriminatory failure to promote).  Likewise, these routine employment decisions also do not establish intent to harm on the employer's part.  See Wright, 2005 WL 1025769 at*4 (granting summary judgment on plaintiff's claim based on defendant's failure to

34

promote him since there was no evidence that such routine denials were "taken with intent to harm and [were] so outrageous as to be beyond the bounds of decency").

Plaintiff has failed to point to any conduct that would rise to the level of "extreme and outrageous" necessary to establish her claim.  Rather, the undisputed evidence shows that the promotion denials at issue were routine and taken without any malice or intent to harm Plaintiff. See Lemaster v. Spartan Tool, LLC, 2009 WL 700240, *5-6 (S.D. Ind. March 16, 2009) (adverse employment situations rarely constitute extreme and outrageous conduct required to sustain tort of emotional distress).  Therefore, summary judgment should be granted in favor of Amtrak.

## V.    CONCLUSION

For the foregoing reasons, Amtrak respectfully requests that this Court grant its Motion for Summary Judgment in its entirety and deny Plaintiff any relief.

Respectfully submitted,

Dated: February 3, 2012

s/  Valerie E. Manos
Thomas F. Hurka, # 21340-49
Valerie E. Manos (*pro hac vice*)
Attorneys for Defendant National Railroad
Passenger Corp. d/b/a/ Amtrak
MORGAN LEWIS & BOCKIUS, LLP
77 West Wacker Dr.; Fifth Floor
Chicago, IL 60601
Tel:  (312) 324-1000
Fax:  (312) 324-1001
thurka@morganlewis.com
vmanos@morganlewis.com

35

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 3rd day of February 2012, I caused to be served a true and correct copy of the foregoing Defendant's Memorandum of Law in Support of Motion for Summary Judgment upon the following via the Court's electronic filing system:

Diamond Z. Hirschauer
The Law Offices of Diamond Z. Hirschauer P.C.
151 N. Delaware Street, Suite 1620
Indianapolis, IN 46204

s/  Valerie E. Manos
Thomas F. Hurka, # 21340-49
Attorney for Defendants National Railroad
Passenger Corp. d/b/a/ Amtrak
MORGAN LEWIS & BOCKIUS, LLP
77 West Wacker Dr.; Fifth Floor
Chicago, IL 60601
Tel:  (312) 324-1000
Fax:  (312) 324-1001
thurka@morganlewis.com
vmanso@morganlewis.com

DB1/ 68879983.7

36